UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA JEAN JEFFERSON,<br><br>      Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 1:13-cv-00704 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF, MONICA JEAN JEFFERSON |

Monica Jean Jefferson ("Plaintiff") asserts she is entitled to benefits under Title XVI of the Social Security Act. Plaintiff seeks judicial review of the decision denying benefits, asserting the administrative law judge erred in analyzing the medical evidence and evaluating the credibility of her subjective complaints. For the reasons set forth below, the administrative decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff filed an application for a supplemental security income benefits on July 14, 2010, alleging disability beginning August 30, 2002. (Doc. 11-6 at 2.) The Social Security Administration denied her application for benefits initially on January 13, 2011. (Doc. 11-4 at 2.) Plaintiff requested a hearing on January 21, 2011, and Plaintiff testified before an administrative law judge ("ALJ") on August 15, 2011. (Doc. 11-3 at 14.) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on October 21, 2011. (*Id.* at 14-25.) Plaintiff requested review by the Appeals Council of Social Security, which denied review of the ALJ's decision

on April 8, 2013.  (Doc. 11-3 at 2.)  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish his disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to show the claimant is able to engage in substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion hearing testimony. 20 C.F.R. §§ 416.927, 416.929.

**A.    Medical Evidence**

Plaintiff received treatment at the H. Claude Hudson Clinic on May 5, 2010, reporting that she had suffered a fall that day when getting out of the bathtub. (Doc. 11-8 at 2, 5.) Plaintiff said she had low back pain and bilateral knee pain, although the pain was worse in her right knee. (*Id.* at 3.) She described the pain as 8/10, and was prescribed pain medication to address it. (*Id.* at 5.) Dr. Arnold Hageman reviewed x-rays of Plaintiffs right knee, and found Plaintiff had mild osteoarthrosis. (*Id.* at 48.) Dr. Hageman also reviewed x-rays of the lumbosacral spine, which was normal. (*Id.*)

On November 12, 2010, Plaintiff was treated at the Hudson Clinic for pain. (Doc. 11-8 at 37.) At this visit, she reported her pain was 9/10. Dr. Hageman reviewed x-rays of Plaintiff's chest and found Plaintiff had "degenerative changes of the thoracic spine." (*Id.* at 43.)

On December 8, 2010, Plaintiff was treated for night sweats and coughing. (*Id.* at 35.) She reported that her pain was a 2/10, and was diagnosed with "knee, back [and] musculoskeletal pain." (*Id.* at 36.)

Dr. Harlan Bleeker performed an orthopedic evaluation on December 30, 2010, at which time Plaintiff weighed 330 pounds. (Doc. 11-8 at 11-12.) Dr. Bleeker noted Plaintiff "complain[ed] of pain in her neck, both shoulders, and both wrists when she picks things up." (*Id.*) Plaintiff reported having "pain in her low back going down both legs to all her toes," and she used a cane due to the pain in her knees. (*Id.*) Dr. Bleeker observed Plaintiff had "a wadding type of gate," and "require[d] assistance getting on and off the examination table." (*Id.* at 12.) Upon examination, Plaintiff had a normal range

of motion in her neck, shoulders, elbows, wrists, and fingers. (*Id.* at 12.) Dr. Bleeker found Plaintiff's knee flexion was below normal limits, and was "limited by the obesity of her thighs." (*Id.*) Further, Dr. Bleeker ordered x-rays of Plaintiff's pelvis, which appeared normal, and her right knee, which showed "marked tri-compartmental degenerative arthritis." (*Id.* at 14.) Further, Dr. Bleeker diagnosed Plaintiff with degenerative disk disease and degenerative arthritis in her cervical and lumbar spine. (*Id.*) Based upon the examination and the x-rays, Dr. Bleeker opined:

> The claimant requires the use of a cane for short and long distances. She cannot kneel, squat or climb. She can lift 20 pounds occasionally, 10 pounds frequently. She can only occasionally reach with either upper extremity above the level of the shoulder joints. She can sit 6 out of 8 hours, stand and walk up to 2 hours with normal periods of rest using her cane.

(*Id.* at 14.)

Dr. Alice Davidson completed a residual functional capacity assessment on January 12, 2011. (Doc. 11-8 at 23-30.) Dr. Davidson opined Plaintiff was able to lift ten pounds occasionally and less than ten pounds frequently. (*Id.* at 24.) In addition, she believed Plaintiff was able to stand and/or walk at least two hours in an eight-hour workday and sit about six hours in an eight-hour workday. (*Id.*) Dr. Davidson opined that Plaintiff had an unlimited ability to push and pull, including the operation of hand/and or foot controls. (*Id.*) Further, Dr. Davidson determined Plaintiff was able to occasionally climb, balance, stoop, kneel, crouch, and crawl. (*Id.* at 25.)

On February 26, 2011, Plaintiff visited the Hudson Clinic and reported "generalized body" pain and pain in her knees, which she described as 9/10. (Doc. 11-8 at 34.)

Plaintiff began treatment at the Watts Health Center on April 8, 2011. (Doc. 11-8 at 54.) She reported having a shortness of breath since the prior night, as well as a cough and congestion. (*Id.* at 54.) Plaintiff said she had pain in her knees, arm, and back for 7 years. (*Id.*) Dr. Chumley noted Plaintiff's history of arthritis and diagnosed her with asthma. (*Id.* at 55.) On April 21, 2011, Dr. Emam noted Plaintiff's history of morbid obesity and asthma, and diagnosed her with fibromyalgia. (Doc. 11-8 at 58.)

On June 10, 2011, Plaintiff weighed 338 pounds when she visited the Watts Health Center. (*Id.* at 52.) At the hearing before the ALJ, Plaintiff reported that she "cut out all fatty food" in her diet, and she weighed 324 pounds. (*Id.* at 71.)

**B.     Administrative Hearing Testimony**

Plaintiff testified before the ALJ on August 15, 2011, and she amended her disability onset date to July 14, 2010. (Doc. 11-3 at 41, 44.) She reported that she had a high school education, but "dropped out of college to go to work" after a couple of years of taking courses. (*Id.* at 45.) Plaintiff reported that she worked in her mother's hair shop, braiding hair and taking out braids. (*Id.* at 45-56.) She reported that she had not worked since July 2000. (*Id.* at 47.)

Plaintiff explained that doing hair required her to be on her feet and "to have movement with [her] hands," which she was unable to do because she had "spasms from ... fibromyalgia." (Doc. 11-3 at 47.) Plaintiff said the pain was "deep down to [her] bones," and the muscles in her "legs, back, everything" ached. (*Id.*) Plaintiff reported that she was unable to "sit in one type of position." (*Id.*) The ALJ noted that Plaintiff came to the hearing with a walker, which Plaintiff said was given to her at the hospital after she fell getting out of the tub. (*Id.* at 48.)

She reported she had fallen three times in the past year, and would just lie on the floor until her daughter found her. (Doc. 11-3 at 59.) She said that the last time she fell, she did not go to the doctor because she was "just so embarrassed" at falling so frequently. (*Id.* at 60.) Plaintiff said the other two times she fell, she called the doctors and they picked her up and provided transportation to the facility for treatment. (*Id.*)

Plaintiff said she stopped going to Hudson Clinic because she did not like the treatment she received. (Doc. 11-3 at 49.) Plaintiff explained: "They don't help me. Just give me an x-ray, tell me I have arthritis, give me a lot of those pills to take and push me out. It stops the pain but unfortunately the side effect is I go to sleep. So they weren't treating me right." (*Id.*) As a result, Plaintiff said she started going to Watts Healthcare Center. (*Id.*) Plaintiff said the doctor at Watts Healthcare Center treated her muscles as well as her arthritis, and prescribed medication for fibromyalgia which calmed her muscles and helped her arthritis, including Tramadol and Cyclobenzaprine. (*Id.* at 49-51.)

Plaintiff reported that her doctor recommended a physical therapist, but did not give her a home exercise program or refer her to a pain treatment program. (Doc. 11-3 at 52, 71.) Plaintiff said she always used the walker when going out, but used a cane in her home. (*Id.* at 53.) She explained that she was unable to "stand up straight" because the pain in her knees, ankles and hips was "too

excruciating." (*Id.*) Plaintiff said her muscles and joints caused "crippling pain," and as a result she did have any comfortable position in which to sit or stand. (*Id.*) Plaintiff testified that she "constantly" changed positions, and was only able to sleep thirty minutes to two hours without having to reposition herself. (*Id.* at 54, 56-57.) Further, Plaintiff said she was unable to even carry her purse due to the pain. (*Id.* at 55.)

She said she saw a nutritionist at the Watts Healthcare Center, who told her not to fry foods like chicken and eggs. (Doc. 11-3 at 57.) Plaintiff reported that she followed the advice, and "lost 17 pounds." (*Id.*) She said: "I believe I was at 230 the first time but now I'm at like 218, I mean sorry about that 300 and something now. I lost 17 pounds, I know that. I don't know the accurate weight." (*Id.* at 73.) Plaintiff said her doctors had not recommended weight loss surgery. (*Id.* at 58.)

Plaintiff reported that she required assistance for bathing and getting dressed, and that her daughter "helped [her] do everything." (Doc. 11-3 at 62.) She explained that she was unable to raise her arms without pain, and Plaintiff said she relied upon her daughter to help her put on her socks, shoes, undergarments, and clothes. (*Id.*) In addition, Plaintiff said her daughter fixed dinner and did all the household chores. (*Id.* at 62-63.) However, Plaintiff stated that she was able to make "a sandwich or something" if home by herself. (*Id.* at 62.)

She said she stopped driving following a car accident, because she was "highly scared" of travel and cars that have airbags. (Doc. 11-3 at 64.) Plaintiff reported the stress of travel would cause "asthma attacks and spasms." (*Id.*) She said she did not have friends, but her family—including six sisters and one brother—all visited, and checked in on her. (*Id.* at 64-65.)

Plaintiff testified that she enjoyed reading, but could only read "a good 15 minutes" before the muscles behind her eyes hurt. (Doc. 11-3 at 65.) She said she did not use a computer, but talked on the phone when her children called. (*Id.* at 66.) Plaintiff said she was "constantly" dozing on and off during the day due to her medication," but estimated that she slept a "total amount of … 15 to 30 minutes" each day. (*Id.* at 72.)

Ms. Matildy, a vocational expert ("VE") testified after Plaintiff at the hearing, and classified her past work as doing housekeeping and hair braiding/weaving as light work. (Doc. 11-3 at 74.) The VE explained that she was unable to find "an exact match" for Plaintiff's work in her mom's hair shop in

the *Dictionary of Occupational Titles* because Plaintiff did not have a cosmetology license, but the VE believed the work was "unskilled, semi-skilled work."[1] (*Id.*)

The ALJ asked the VE to consider an individual the same age as Plaintiff, with the same education and work history. (Doc. 11-3 at 75.) In addition, the ALJ asked the VE to assume this individual "require[d] the use of a cane for short and long distances;" could not kneel, squat, or climb; could lift 20 pounds occasionally and 10 pounds frequently; occasionally reach with her arms above the level of her shoulders; sit for six out of eight hours; and stand and walk up to two hours in an eight-hour day. (*Id.*) The VE opined such a person was unable to perform Plaintiff's past relevant work, because she would be limited to sedentary work. (*Id.*) However, the VE opined the hypothetical person would be able to perform unskilled sedentary work in the economy, including table worker, *DOT* 739.687-182; film touch-up inspector, *DOT* 726.684-050; and assembler, *DOT* 734.687-018. (*Id.* at 76.) The VE reported that there was no overhead reaching for any of these positions, and the use of a "cane would not impact" the number of jobs available. (*Id.* at 76, 78.)

Next, the VE considered an individual who had additional physical limitations, including "no concentrated exposure to fumes, odors, dusts, gasses and poor ventilation." (Doc. 11-3 at 77.) The VE opined that a person would be able to work as a table worker, film-touch up inspector, and assembler even with these limitations. (*Id.*)

Third, the ALJ asked the VE to consider an individual who was able to "lift and carry up to 10 pounds occasionally, less than 10 pounds frequently;" sit about six hours in an eight-hour day, stand and/or walk at least two hours in an eight-hour day; and occasionally climb, balance, stoop, kneel, crouch, and crawl. (Doc. 11-3 at 77.) The VE opined such a person was unable to perform Plaintiff's past relevant work, but could perform the same three jobs of table worker, film-touch up inspector, and assembler. (*Id.*)

The VE opined that if she "assume[d] the limitations that the claimant testified to," no work was available in the national economy. (Doc. 11-3 at 76.) Similarly, no work would be available to an

---

[1] *The Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

individual "who was likely to be off task up to 20 percent of the work day due to physical limitations [and] symptoms of pain," or "who was likely to miss work three times or more in one month due to symptoms." (*Id.* at 77.)

### C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after her application date of July 6, 2010. (Doc. 11-3 at 22.) Second, the ALJ found Plaintiff's severe impairments included: degenerative disc disease of the cervical spine, thoracic spine and lumbar spine; degenerative joint disease of the right knee; morbid obesity; asthma; and allergic rhinitis. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment, or a combination of impairments, that met or medically equaled a Listing. (*Id.*) Further, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk at least 2/8 hours with normal periods of rest, using a cane for short and long distances, sit about 6/8 hours, occasional ramp, stair, ladder, rope and scaffold climbing, occasional balancing, stooping, kneeling, crouching and crawling, occasionally reaching over the level of the shoulder joints and no concentrated exposure to fumes, odors, dusts, gasses and poor ventilation.

With this residual functional capacity ("RFC"), the ALJ concluded that Plaintiff was "unable to perform any past relevant work," but retained the ability to perform "jobs that exist in significant numbers in the national economy," such as table worker, film touch up inspector, and assembler. (*Id.* at 24-25.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 25.)

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ erred in evaluating the record related to her obesity and fibromyalgia, and "breached her duty to fully and fairly develop the record." (Doc. 16 at 5.) Further, Plaintiff contends that the ALJ erred in assessing the credibility of her subjective complaints, and the adverse credibility determination lacks the support of substantial evidence. (*Id.*) On the other hand, Defendant argues that "the Court should affirm the Commissioner's final decision in this matter." (Doc. 17 at 9.)

### A. Plaintiff's Obesity

Plaintiff argues the ALJ made a "factual finding that plaintiff weighed 218 pounds," which "was off by 100 pounds." (Doc. 16 at 6.) Plaintiff observes: "The ALJ found plaintiff's obesity to be

a severe impairment. Thus, the ALJ must have believed that plaintiff's obesity had some material impact on plaintiff's ability to do basic work activities." (*Id.* at 6, citing *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)). According to Plaintiff, Social Security Ruling 02-1p "requires and ALJ to consider an individual's obesity at steps two through five of the sequential evaluation, and requires that obesity be considered in combination with the individual's other impairments."[2] (*Id.*) Plaintiff notes that "the ALJ did not cite SSR 02-1p," and argues the ALJ "failed to make any individualized assessment of plaintiff's obesity on her other impairments." (*Id.* at 6-7.)

Significantly, review of the record does not support Plaintiff's assertion that the ALJ made a factual determination that Plaintiff weighed 218 pounds at the time of the hearing on August 15, 2011. The ALJ noted that Plaintiff "said that her weight went from 330 pounds to 218 pounds because she lost weight." (Doc. 11-3 at 17.) Specifically, Plaintiff testified: "I believe I was at 230 the first time but now I'm at like 218, I mean sorry about that 300 and something now. I lost 17 pounds, I know that." (*Id.* at 73.) Nevertheless, the ALJ noted that in June 2011, Plaintiff had a physical examination where she weighed 338 pounds, and that on August 10, 2011, she weighed 324 pounds after "due to a change in diet and elimination of fatty foods." (*Id.* at 18-19.) Thus, the ALJ was not "off by 100 pounds" when considering Plaintiff's obesity.

Moreover, the record demonstrates that the ALJ complied with SSR 02-1p, which requires the ALJ "to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process." 2002 SSR LEXIS 1 at *3 (2002). The ALJ found at step two that Plaintiff's severe impairments included "morbid obesity." (Doc. 11-3 at 22.) However, this impairment, when combined with the other severe impairments, was not sufficient to meet or medically equal a Listing at step three. (*Id.*) To determine the RFC, the ALJ relied upon the decisions of Drs. Bleeker and Davidson. As the ALJ observed, "The claimant's obesity was considered by the consulting doctors in their assessment that the clamant could still perform at least sedentary level

---

[2] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

exertional activity." (*Id.* at 19.) Thus, the at steps four and five, the ALJ used the RFC to find that Plaintiff was unable to perform her past relevant work but was able to perform other unskilled sedentary work in the national economy. (*See id.* at 23-24.) Accordingly, the ALJ met her burden to consider Plaintiff's obesity through the sequential evaluation, as required under SSR 02-1p.

**B.     Plaintiff's Fibromyalgia**

According to Plaintiff, "the ALJ rejected plaintiff's fibromyalgia diagnosis and found [her] fibromyalgia was not a medically determinable impairment." (Doc. 16 at 7.) Plaintiff notes that "physicians at Watts diagnosed her with fibromyalgia," and prescribed Tramadol and Cyclobenzaprine for her pain. (*Id.*) In addition, Plaintiff asserts her medical records show she "consistently complained of pain and that she was consistently diagnosed with fibromyalgia." (*Id.* at 8, citing AR 281, 287, 24, 257, 275.) Further, Plaintiff asserts that "it is misleading to state that plaintiff did not demonstrate any trigger points [because] there is no evidence in the medical records that such an evaluation was performed." (*Id.*)

Importantly, Plaintiff mischaracterizes the ALJ's findings. The ALJ did not find, as Plaintiff argues, that her fibromyalgia was not a medically determinable impairment or reject the diagnosis. Rather, the ALJ found her fibromyalgia was not a medically determinable *severe impairment* at step two of the sequential evaluation. (*See* Doc. 11-3 at 19, 22.) At step two, a claimant must make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yucket*, 482 U.S. 137, 146-47 (1987); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), 416.921(a).

The Ninth Circuit has determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In other words, a medical diagnosis alone does not make an impairment qualify as "severe." Here, though Plaintiff identifies evidence that she was diagnosed with fibromyalgia, she failed to carry her burden to demonstrate that this impairment is severe. The ALJ noted Plaintiff "was given a diagnosis of fibromyalgia" in April

2011. (Doc. 11-3 at 19.) However, at following examinations, Plaintiff did not exhibit tenderness "or any other signs or symptoms of fibromyalgia, or functional restrictions from fibromyalgia." (*Id.*) The ALJ concluded that the medical record did not "document ongoing functional restrictions of the claimant's body due to fibromyalgia that have precluded regular and ongoing work activity for any continuous period of 12 months." (*Id.*) Because Plaintiff does not identify any medical evidence that her fibromyalgia "significantly limit[s] [her] physical or mental ability to do basic work activities," she fails to carry her burden to establish that the fibromyalgia is a severe impairment, and the ALJ did not err in her step two analysis.[3] *See* 20 C.F.R. § 416.921(a).

## C. Duty to Develop the Record

Plaintiff argues, "The ALJ breached her duty to fully and fairly develop the record by not calling a medical expert to testify at the hearing and by failing to send plaintiff to another consultative examination to evaluate her fibromyalgia." (Doc. 16 at 8.) The law is well-established in the Ninth Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, the law imposes a duty on the ALJ to develop the record in limited circumstances. 20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). Accordingly, the duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201); *see* 20 C.F.R. § 416.912(e).

Here, there were no conflicts or ambiguities to be resolved, nor did the ALJ find the record was insufficient to make a disability determination. Consequently, the ALJ's duty to develop the record was not triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir. 2002) (duty not triggered when the ALJ did not conclude the medical report was inadequate to make a disability determination);

---

[3] Notably, even if the Court were to find the ALJ erred in finding Plaintiff's fibromyalgia was "not severe" at step two, any error in designating specific impairments as severe at step two is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that any error in omitting an impairment from the severe impairments identified at step two was harmless where the step was resolved in the claimant's favor). Here, step two was resolved in Plaintiff's favor because the ALJ determined Plaintiff had medically determinable severe impairments.

*Mayes*, 267 F.3d at 459-60.  Because the ALJ did not have a duty to develop the record, Plaintiff's assertion that the ALJ failed to develop the record by not calling a medical expert or sending Plaintiff to a second consultative examination is without merit.

**D.     Credibility Determination**

Plaintiff contends the ALJ failed to articulate "specific, clear, and convincing reasons for rejecting [her] subjective complaints." (Doc. 16 at 11.)  In evaluating credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, when there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting her subjective complaints.  *Id.*, 504 F.3d at 1036.

An adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Here, the ALJ determined Plaintiff's statements concerning her symptoms were "not fully credible" because her "subjective complaints and alleged limitations [were] out of proportion to the objective clinical findings and observed functional restrictions." (Doc. 11-3 at 23.)  Supporting these findings, the ALJ cited the objective medical record and the treatment Plaintiff received. (*Id.*)

1.     Treatment received

In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c).  Further, the Ninth Circuit has determined that an "ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ's consideration of the claimant's failure to see treatment for a three or four month period was "powerful evidence"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly

excruciating pain" alleged).

Here, the ALJ found Plaintiff's "subjective complaints and alleged limitations are not consistent with the treatment she receives." (Doc. 11-3 at 23.) The ALJ observed that Plaintiff had "access to treatment through [a] wide network of County clinics and hospitals and through Free Clinics." (Doc. 11-3 at 23.) However, the ALJ found "the treatment record [was] rather sparse and infrequent." (*Id.*) Further, the ALJ found that Plaintiff "ha[d] not been provided or requested aggressive treatment for any of the conditions she has been diagnosed with." (*Id.*) Because Plaintiff received only limited treatment for the alleged disabling impairments, the treatment received—or lack thereof—supports the adverse credibility determination. *See Burch v,* 400 F.3d at 681; *Meanel*, 172 F.3d at 1114.

### 2. Objective medical evidence

As a general rule, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch* , 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, the ALJ's credibility determination did not rest solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, objective medical evidence was a relevant factor in evaluating Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not

credible"). Here, the ALJ noted that Dr. Bleeker determined Plaintiff had "normal hands [and] the ability to Jamar grip 20 pounds with the right hand and 15 pounds with the left." (Doc. 11-3 at 16.) The ALJ observed: "There is no evidence of severe disuse muscle atrophy or loss of muscle tone that would be compatible with her alleged inactivity and inability to function." (*Id*. at 23.) In addition, the ALJ found there was "no evidence of a medical necessity for a walker, wheelchair, or two canes" as Plaintiff testified to needing, although Dr. Bleeker opined she required the use of single cane for walking. (*Id.*) Further, the ALJ found "no evidence that [Plaintiff] must lie down, sleep, or elevate body parts throughout a workday." (*Id.*) Because the ALJ carried the burden to discuss the medical records undermining Plaintiff's complaints, the objective medical record supports the ALJ's adverse credibility determination.

By discussing both the treatment received and the objective medical evidence, the ALJ satisfied her burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

## CONCLUSION AND ORDER

As discussed above, the ALJ applied the proper legal standards and the findings are supported by substantial evidence. Consequently, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The administrative decision is **AFFIRMED**; and
2. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security, and against Plaintiff Monica Jean Jefferson.

IT IS SO ORDERED.

Dated: __August 29, 2014__                    __/s/ Jennifer L. Thurston__
                                              UNITED STATES MAGISTRATE JUDGE